UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                          |   |                                  |
|------------------------------------------|---|----------------------------------|
| ROBERT BAKOIAN,                          | ) |                                  |
|     Plaintiff,                           | ) |                                  |
| v.                                       | ) | Civil Action No. 13-cv-13021-LTS |
| NANCY A. BERRYHILL,                      | ) |                                  |
| Acting Commissioner of Social Security,  | ) |                                  |
|     Defendant.                           | ) |                                  |

MEMORANDUM AND ORDER

March 30, 2018

SOROKIN, J.

Robert Bakoian challenges a finding by the Commissioner of the Social Security Administration ("the Commissioner") that he is not disabled, and seeks reversal of the resulting denial of his claim for Social Security Disability Insurance Benefits ("DIB"). The Commissioner asks the Court to affirm her decision. Doc. No. 56. For the reasons below, Bakoian's motion for an order reversing the Commissioner's decision (Doc. No. 54) is DENIED, and the Commissioner's motion (Doc. No. 56) is ALLOWED.

I.  BACKGROUND

   A.  Procedural History

This case lands here for the third time after a feat of administrative and procedural acrobatics. Bakoian thrice applied for social security benefits: once in June 2009 for both DIB and Supplemental Security Income ("SSI"), again in February 2012 for SSI, and once more in

1

November 2015 for SSI. The Court reviews the ALJ's September 3, 2015 decision on the 2009 and 2012 consolidated applications.

This Court previously reviewed the Commissioner's denial of Bakoian's 2009 application. See Bakoian v. Astrue, No. 13-cv-10075-LTS (D. Mass. Nov. 12, 2013), ECF No. 23 [hereinafter Remand Order]. The procedural background relevant to that review was set forth in the November 12, 2013 Remand Order; it is incorporated, but will not be repeated, here. Id. at 1-2, 13-15. In its prior Order, the Court determined "that the ALJ [had] improperly weighed the opinions of two treating physicians regarding the severity of Bakoian's mental impairments." Id. at 18. Specifically, the Court found that: 1) the ALJ's reasons for assigning "less weight" to the opinion of Bakoian's treating physician, Dr. Ralph Talbot, were not supported by the record, id. at 18-22; 2) the ALJ had improperly rejected the opinion of Dr. Yun Kit Lam without obtaining clarifying information, id. at 22-23; and 3) the ALJ had improperly relied on the report of an agency consultant who had not reviewed all relevant records, id. at 23. The Court remanded and required the ALJ to "contact[] Dr. Lam for clarification," "reweigh all medical source opinions," and "consider[] whether and how Bakoian's more recent treatment records impact the weight assigned to" the agency consultant's opinion. Id.

Meanwhile, on February 15, 2012, Bakoian filed a second application for SSI, again alleging disability since May 13, 2009. A.R. at 203-23.[1] After it was denied initially and on reconsideration, A.R. at 142, 148, Bakoian appeared before the same ALJ who again found that he was not disabled, A.R. at 1529-49. The Appeals Council denied review, A.R. at 1, and

---

[1] Citations to "A.R." are to the administrative record, which appears as documents 42 and 49 on the electronic docket in this matter. Page numbers are those assigned by the agency and appear in the lower right corner of each page.

2

Bakoian filed another appeal in this Court. Doc. No. 1. On October 28, 2014, pursuant to an agreement between Bakoian and the Commissioner, the Court remanded Bakoian's 2012 application to the agency for further proceedings. Doc. No. 27.

On November 14, 2014, the Appeals Council consolidated and remanded the 2009 and 2012 applications for further proceedings before the ALJ. A.R. at 965-66. Bakoian had a third hearing before the same ALJ, who issued a September 3, 2015 decision again denying his applications. A.R. at 960.

Two months later, Bakoian reapplied for SSI benefits; this application was approved on December 28, 2016. See Doc. No. 55 at 12.[2]

On May 5, 2016, Bakoian filed an amended complaint in this action requesting the Court's review of the ALJ's September 2015 decision, but only insofar as it denied his 2009 application for DIB. Doc. No. 34.

B.  Medical History

The Court recounted in detail the relevant records regarding Bakoian's mental impairments in its prior Order. Remand Order at 2-13. Those facts are incorporated, but will not be repeated, here. The following additional facts bear on the issue of Bakoian's mental limitations:[3]

- On January 5, 2012, Bakoian was admitted to Bournewood Hospital due to anxiety and depression. He was "irritable, demanding, and med-seeking." Bakoian reported he had

---

[2] Bakoian's brief references his 2015 application and its approval, but the attachment containing those exhibits does not appear on the docket. The Commissioner does not dispute these events. The Court is not aware whether or how the 2012 and 2015 applications differed from Bakoian's 2009 submissions.
[3] As was the case in his first appeal, Bakoian does not challenge the ALJ's ruling insofar as his physical impairments are concerned.

3

been using drugs heavily since being released from prison three months prior. He was assigned a Global Assessment of Functioning ("GAF") score of 50 upon his discharge on January 10, 2012. A.R. at 975.

- On January 19, 2012, Dr. Talbot completed a disability report stating Bakoian had no difficulty understanding and remembering, some difficulty "keeping his mind on one thing," and some problems "arguing" with coworkers. A.R. at 776-81. Dr. Talbot completed the same report a year later, reporting the same assessment. A.R. at 839-45.

- On June 17, 2012, Bakoian was admitted to the ER for symptoms related to intravenous heroin use. He reported that he planned to continue using heroin until he could get into a methadone clinic in July. A.R. at 594-614.

- On August 8, 2012, Dr. Douglas Robbins, an agency consultant who had reviewed Bakoian's medical records, opined that Bakoian was capable of unskilled work with "infrequent/casual" interactions with others. A.R. at 67-81.

- On January 17, 2013, Dr. Kathryn Collins-Wooley, another agency consultant, reviewed Bakoian's records and concurred with Dr. Robbins's opinion. She assessed that Bakoian was moderately limited in understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, and getting along with coworkers or peers. In her view, Bakoian was not significantly limited in understanding and remembering simple instructions, sustaining ordinary routine without special supervision, and working in coordination with or in proximity to others. A.R. 83-100.

- On February 20, 2013, Dr. Lam wrote a letter summarily stating that Bakoian was "100% disabled" due to his medical and psychiatric issues. A.R. at 846.

4

- On May 8, 2013, during a routine physical examination, Bakoian reported that he had last used heroin four months earlier. A.R. at 933-59.

- From May 2013 through January 2015, Bakoian met with Dr. Talbot regularly. Dr. Talbot noted Bakoian's mood was generally "up and down"; he often felt hopeless; he spent his time at a methadone clinic and with his girlfriend; he helped take care of his girlfriend's autistic son; his relationship with his girlfriend was at least "OK" most of the time; and he had to leave his apartment but for single-occupancy housing after a neighbor alleged harassment against him. A.R. at 1687-708.

- On March 30, 2015, in a mental RFC assessment for the period going back to April 21, 2010, Dr. Talbot opined that Bakoian had marked limitations in: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; accepting instructions and responding appropriately to supervisors; and traveling to unfamiliar places or using public transportation. A.R. at 1709-12.

- On April 20, 2015, the ALJ sent a letter to Dr. Lam asking for clarification of his assessment of Bakoian. A.R. at 1659. Dr. Lam responded that he had not treated Bakoian for mental impairments and had not received information from Bakoian's mental health care providers. His assessment that Bakoian was disabled was based only on Bakoian's drowsiness during office visits. Dr. Lam stated he is not an appropriate person to assess Bakoian's mental capacity. A.R. at 1718.

C. <u>Administrative Decision</u>

In his 2015 decision, the ALJ determined that Bakoian met the insurance requirements of the Social Security Act through June 30, 2010 and proceeded with the five-step sequential

evaluation for determining whether an individual is disabled. A.R. at 968; see 20 C.F.R. § 404.1520(a). At step one, the ALJ found Bakoian had not engaged in substantial gainful activity since May 13, 2009. A.R. at 968. At step two, the ALJ found Bakoian had certain severe physical impairments and the following severe mental impairments: depression, anxiety, attention deficit hyperactivity disorder; post-traumatic stress disorder; and history of substance abuse. Id. At step three, the ALJ found Bakoian did not have an impairment or combination of impairments listed in the relevant appendix to the regulations.[4] A.R. at 969-70.

Before proceeding to step four, the ALJ found Bakoian had the residual functional capacity to "understand and remember simple instructions," "concentrate for 2 hour periods over an 8 hour day on simple tasks," "interact appropriately with co-workers and supervisors but should avoid work which requires close coordination or teamwork with coworkers and should avoid work which requires frequent contact with the general public," and "adapt to changes in a work setting." A.R. at 970. In so concluding, the ALJ considered records spanning more than six years, including medical records from Bakoian's treating physicians and assessments performed by agency doctors. A.R. at 970-83. He also considered Bakoian's testimony about his symptoms in three administrative hearings. Id. Of particular relevance here, the ALJ gave "great weight" to the opinions of three non-examining agency doctors (Drs. Kiley, Robbins, and Collins-Wooley) regarding Bakoian's mental limitations, "some weight" to the opinion of another non-examining agency doctor (Dr. O'Sullivan), and "less weight" to the assessments by three of Bakoian's treating physicians (Drs. Lam, Sigel, and Talbot). A.R. at 984-85. The ALJ also explained in detail his reasons for finding certain aspects of Bakoian's testimony not credible. A.R. at 985-86.

---

[4] Bakoian does not challenge the ALJ's findings at any of the first three steps.

6

Based on his RFC determination and the testimony of a vocational expert, the ALJ found at step four that Bakoian could not perform his past relevant work as a floor laborer. A.R. at 987. At step five, the ALJ concluded Bakoian "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," in particular "light, unskilled work" including jobs such as "hand packer, a pack and fill machine operator or a finisher." A.R. at 988.

## II. LEGAL STANDARDS

The familiar standards, which the Court described in its previous Order and incorporates here by reference, apply to its review in this case. See Remand Order at 15-18 (summarizing "substantial evidence" standard and review of administrative findings, standards governing consideration of opinions rendered by treating and non-treating medical experts, and requirement that ALJ give "good reasons" for rejecting treating physician's opinion).

Two additional principles bear noting. First, a claimant seeking DIB must prove he was disabled on or before the date he was last insured. 42 U.S.C. § 423(a)(1)(A), (D). Thus, Bakoian bears the burden of proving he was disabled during the period between when he first claimed disability (May 13, 2009) and the date he was last insured (June 30, 2010). Hooke v. Colvin, 20 F. Supp. 3d 286, 294 (D. Mass. 2014). Second, if drug or alcohol abuse is "a contributing factor material" to a finding of disabling impairments or limitations, then a claimant "shall not be considered to be disabled" for DIB purposes. 42 U.S.C. § 423(d)(2)(C); see 20 C.F.R. § 404.1535.

## III. DISCUSSION

Bakoian seeks reversal on one ground: that the ALJ's decision "was not supported by substantial evidence" because the ALJ "failed to follow" this Court's Remand Order. Doc. No.

55 at 2. He makes four points in support of this view. This Court has carefully reviewed its Remand Order, the ALJ's decision, and the entire administrative record in this case. Each of Bakoian's arguments is unavailing.

First, Bakoian accuses the ALJ of having "repeatedly . . . disregarded Dr. Talbot's opinion without a reasonable explanation," further claiming "it [is] impossible to respond to" the ALJ's decision to give "less weight" to Dr. Talbot's opinion because the ALJ "points to exhibits in general terms and fails to point out with any specificity what is in contradiction." Doc. No. 55 at 13-14. This characterization is unfair. The ALJ identified four exhibits submitted to him, each a formal disability report in which Dr. Talbot responded to specific questions regarding Bakoian's mental limitations. A.R. at 985; see A.R. at 975-76, 980, 983 (summarizing each of the four relevant reports). The ALJ accorded "some weight" to two of the reports, both of which were prepared for submission to a Massachusetts state agency, and both of which described relatively limited mental impairments. A.R. at 985; see A.R. at 780, 844 (noting "[n]o difficulty" understanding and remembering, "[s]ome difficulty keeping his 'mind on one thing,' and [s]ome problems with co-workers and getting into 'arguments'"). The two other reports presented meaningfully different, more extreme assessments of Bakoian's limitations. See A.R. at 975, 983 (summarizing various areas in which those reports reflected a "marked limitation").

The ALJ's assessment of the opinions presented in Dr. Talbot's four disability reports is supported by substantial evidence, both in Dr. Talbot's own records and in Bakoian's treatment record as a whole. An ALJ may choose not to grant controlling weight to a treating physician's opinion if that opinion is inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2). It is for the ALJ, not this Court, to resolve inconsistencies in the evidence regarding a claimant's limitations, so long as he provides "good reasons" for deciding not to

adopt a treating physician's opinion. Id.; accord Abubakar v. Astrue, No. 11-cv-10456, 2012 WL 957623, at *8-10 (D. Mass. Mar. 21, 2012). Rather than summarily rejecting Dr. Talbot's more extreme assessments as "inconsistent with the treatment record" or acknowledging only parts of Dr. Talbot's treatment notes, the ALJ this time fairly summarized all of Dr. Talbot's (and Dr. Sigel's) treatment records, identified particular reports which he considered important in deciding whether and to what extent to accord weight to Dr. Talbot's opinions, and gave good reasons for his determinations in this respect. In other words, the ALJ demonstrated, in his 2015 decision, that he considered all relevant records, and he adequately explained the basis for his conclusions as to the weight Dr. Talbot's various opinions merited.

Second, Bakoian faults the ALJ for again concluding that Dr. Talbot's opinions were undermined by Bakoian's day-to-day "sporadic activities [that] are not indicative of [his] ability to perform substantial gainful activity." Doc. No. 55 at 14. He also accuses the ALJ of assessing his daily activities in a manner which constitutes "rendering a medical opinion." Id. Although this was an error found by the Court (and conceded by the Commissioner) on review of the ALJ's 2011 decision, Remand Order at 21, the Court is satisfied that the ALJ has not repeated the error on remand. For one thing, the ALJ has presented a much more comprehensive account of Bakoian's daily activities, going far beyond the bookstore visits, walks on the beach, and doctors' appointments noted in 2011. A.R. at 27-28.[5] Moreover, the ALJ's invocation of these facts serves not only to justify his decision not to credit the marked limitations reflected in two of Dr. Talbot's reports, but also to describe how Bakoian's activities and capabilities are different

---

[5] For example, the ALJ noted periods when Bakoian attended school, attended methadone clinics, lived on his own, helped his girlfriend care for her autistic son, visited family, and traveled in and around Boston independently.

9

during times when he is actively using drugs, as compared to times when he is in treatment and sober (and his mental impairments are successfully managed by medication prescribed and monitored by Dr. Talbot). In this regard, the ALJ's reliance on such information is reasonable, and the record evidence of Bakoian's activities substantially supports the ALJ's conclusion that "absent substance abuse," Bakoian "would have moderate mental limitations."[6] A.R. at 984.

Third, Bakoian complains that, rather than crediting Dr. Talbot, the ALJ rested his determination of Bakoian's limitations on the assessments of three agency experts who neither treated nor examined Bakoian, and whose assessments "were stale and were completed without the benefit of [a] significant amount of the treatment history and medical records." Doc. No. 55 at 15. In his 2011 decision, the ALJ accorded "great weight" to only one physician: Dr. Kiley, an agency consultant who rendered an opinion without the benefit of a full medical record. A.R. at 116-17. The Court's concerns about this aspect of the ALJ's decision arose not from the age or "staleness" of Dr. Kiley's assessment, but from the incompleteness of the information available to Dr. Kiley when he made the relevant assessment.[7] Remand Order at 23. Nothing about the Court's Remand Order required the ALJ to reject outright Dr. Kiley's opinion. In his 2015 decision, the ALJ accorded "great weight" to Dr. Kiley again, but also to two other agency consultants who reviewed Bakoian's application in 2012 (Dr. Robbins) and 2013 (Dr. Collins-Wooley) with the benefit of a more complete record of evidence as to the relevant time period. A.R. at 984. He also accorded weight to a fourth agency consultant's evaluation, completed in

---

[6] Even Dr. Talbot, in his most recent mental RFC assessment, acknowledged that Bakoian's drug use was "material to his[] level of functioning" between April 2010 and March 2015. A.R. at 1709, 1712.
[7] Staleness concerns carry even less weight now, as Bakoian's DIB claim relates only to the period of time between his claimed onset date in May 2009 and his date last insured in June 2010. Dr. Kiley's assessment was during that time period.

10

March 2010, to the extent the expert opined that, absent substance abuse, Bakoian would have only moderate mental limitations.[8] Id.

Where an ALJ does not give controlling weight to a treating physician's opinion, he may weigh the opinions of other medical experts in light of any relevant factors, including the extent to which they are supported by relevant evidence, are consistent with the medical record, result from the sources' specialized knowledge, and account for significant post-dated changes to the claimant's condition. Abubakar, 2012 WL 957623, at *11; 20 C.F.R. § 404.1527(c). Here, the ALJ did just that. He credited the three opinions at issue after finding they were supported by relevant evidence and consistent with the medical records through the date of his decision. A.R. at 984. He catalogued the available medical records and summarized their pertinent contents in detail. A.R. at 970-86. Although Dr. Kiley rendered his opinions without all relevant records, Bakoian has not argued (nor does the Court perceive from the record) that either Dr. Robbins or Dr. Collins-Wooley rendered an opinion on incomplete or inadequate records. These two later assessments, which express limitations consistent with those identified by Dr. Kiley on a partial record (as well as those posited by Dr. O'Sullivan as existing in the absence of substance abuse), corroborate Dr. Kiley's opinion and mitigate the Court's previously stated concerns. And, as the ALJ's explanation makes clear, all of these opinions are further corroborated by the available post-dated records. The Court, therefore, perceives no lingering error in the ALJ's evaluation of the agency consultants' opinions.

---

[8] Notably, Bakoian does not challenge the ALJ's reliance on this evaluation, completed by Dr. O'Sullivan, nor acknowledge—let alone directly confront—its conclusion, credited by the ALJ and supported by the record, that Bakoian's substance abuse materially impacted his asserted mental impairments.

Fourth, Bakoian urges that the ALJ was required to "proactively request[] clarification" from Dr. Talbot before concluding that his opinion was not entitled to controlling weight. Doc. No. 55 at 16-17. Neither the law nor this Court's Remand Order imposed such a duty.[9] When weighing a medical opinion supported by inadequate or incomplete treatment records, an ALJ must contact the responsible medical source and request the missing information. 20 C.F.R. § 404.1519p(b). But this obligation exists only where the ALJ is "unable to ascertain the basis of the opinion." Conte v. McMahon, 472 F. Supp. 2d 39, 49 (D. Mass. 2007). The ALJ had before him a complete set of Dr. Talbot's treatment notes spanning a five-year period. Bakoian does not suggest any part of the records documenting his treatment by Dr. Talbot (or by any other physician) was missing. What Bakoian characterizes as a failure by the ALJ to understand the basis for Dr. Talbot's opinion was, rather, a credibility determination by the ALJ as to which assessments were most consistent with the record as a whole. Such determinations lie squarely within the jurisdiction of the ALJ. See Richardson v. Perales, 402 U.S. 389, 399 (1971) (noting resolution of conflicts in evidence, including medical evidence, is the Commissioner's task). No duty to contact arises in these circumstances. Conte, 472 F. Supp. 2d at 49.

In sum, substantial evidence in the record supports the ALJ's decision, including each aspect of that decision which Bakoian specifically challenges here. The ALJ has complied with the Remand Order and corrected the errors identified therein. Accordingly, there is no basis for remand or reversal of the Commissioner's denial of Bakoian's 2009 application for DIB.

---

[9] This Court did explicitly require the ALJ to contact another treating physician, Dr. Lam, before determining whether to credit his opinion that Bakoian is disabled. Remand Order at 22. On remand, the ALJ contacted Dr. Lam, who made clear that he neither treated Bakoian's mental impairments nor was sufficiently informed to render an opinion as to their disabling effect, if any. A.R. at 1718.

IV.     CONCLUSION

For the foregoing reasons, Bakoian's motion for an order reversing the Commissioner's decision (Doc. No. 54) is DENIED, and the Commissioner's motion for an order affirming her decision (Doc. No. 56) is ALLOWED.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge